UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL BEHAYLO,

                              Plaintiff,

vs.

THE TOP-FLITE GOLF COMPANY,

                              Defendant.

CIVIL ACTION NO. 05-30178-KPN

**DEFENDANT'S MOTION TO ALLOW
BRIEF IN EXCESS OF TWENTY PAGES**

        NOW COMES Defendant, The Top-Flite Golf Company, and pursuant to the

Local Rules of the District Court of Massachusetts moves for permission to file a Reply

Brief to Opposition to Its Motion for Summary Judgment that is in excess of twenty

pages.  The Reply Brief to Opposition to Its Motion for Summary Judgment, attached

hereto as Exhibit A, seeks dismissal of the entire case and deals with a variety of issues

raised by the Complaint, including whether Plaintiff was laid off because of his age in

violation of the Age Discrimination in Employment Act and Chapter 151B, whether an

agreed upon Release of Claims bars the prosecution of the state law claim, and, in the

event summary judgment is denied, whether partial summary judgment limiting

damages is appropriate in light of subsequent reorganization and total discontinuation of

Plaintiff's former job duties.

        Allowing this motion will assist the court in ruling on this dispositive motion.

Respectfully Submitted,


   /s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.
BBO #405760
Counsel for Defendant
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144
Dated:  February 2, 2007          Tel. (413) 737-4753/Fax (413) 787-1941

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Defendant's Motion to Allow Reply Brief to Opposition to Its Motion for Summary Judgment* was served upon the attorney of record for each other party via electronic filing on February 2, 2007.

   /s/ Jay M. Presser, Esq.
Jay M. Presser, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL BEHAYLO,

                              Plaintiff,

vs.

THE TOP-FLITE GOLF COMPANY,

                              Defendant.

CIVIL ACTION NO. 05-30178-KPN

**DEFENDANT'S REPLY BRIEF TO
OPPOSITION TO ITS MOTION FOR
SUMMARY JUDGMENT**

## I.    The Facts

Defendant, The Top-Flite Golf Company ("Defendant", "TFGC" or the "Company"), filed an extensive Statement of Undisputed Facts.  *None of the facts as alleged by Defendant have been disputed by Plaintiff's filings, and accordingly, must be viewed as admitted.*  Thus, while Plaintiff filed a document captioned "Statement of Disputed Facts", Defendant has filed a Reply to said document which, point by point, addresses each of the alleged "disputed" facts contained in the Plaintiff's Statement.  Said response, incorporated by reference herein, notes that most of the facts, at least those properly supported by the referenced citations[1], are, in reality, not in dispute at all.  In a few occasions, the so called "disputed facts" are simply additional facts, most of which remain, following the Defendant's Response, undisputed.[2]  Indeed, there is only

---

[1] Plaintiff's Memorandum cites to facts in his Statement of Disputed Facts.  However, to the extent that the memorandum cites facts that are not properly supported by the cited materials (or in some cases, actually contradict the cited materials), they cannot be relied upon to defeat the Motion for Summary Judgment.  Nor can those, such as Duval's financial analysis of the company's problems, that are not based on first-hand information.

[2] Thus, there is no dispute that a woman from Callaway indicated that she had never seen a company with so many employees with over 20 years seniority and that, at Callaway,

one fact properly raised and supported about which there is contradictory evidence, and while the court must accept the version of that fact most favorable to Plaintiff, it is not a material fact.[3]

Defendant would note however, that at the end of his recitation of facts, Plaintiff, without support, notes that "later, still another cost accountant was brought into the department, Mary Rosenthal."[4] Defendant would note that Ms. Rosenthal was not an additional cost accountant but a replacement for Richard Levandowski. Moreover, she was older than Plaintiff, and thus, her becoming a cost accountant cannot possibly assist the Plaintiff's claim of age discrimination.

---

she was accustomed to people who had been there less than 20 years. It is the relevance of that fact that is disputed.

[3]The only actual disputed fact relates to the claim at ¶ 15 of the Plaintiff's Statement of Disputed Facts, where, discussing the possibility of a potential age discrimination suit from an older field salesman, David Richardson alleges that Bosworth responded that "you should just fire a couple of young guys along with the old ones and no one would notice." Bosworth had denied making that statement and said that he indicated he wasn't concerned about discussing non-existent lawsuits. The affidavit of another Plaintiff witness, Gielow, also does not assert that Bosworth told managers to layoff young people but rather asserts that "Mr. Bosworth's response was that we should do what we needed to do to cover ourselves." The court must, of course, accept Richardson's uncorroborated assertion for purposes of this motion. However, as noted in the response to the Defendant's Statement of Undisputed Facts, "Accepting Richardson's account would support the conclusion that Bosworth suggested that a few younger people be unjustly terminated to assist in the defense of a lawsuit brought by older workers eliminated when, according to Richardson's phrasing, the "dead weight" was culled. It does not support a directive that someone would be fired because they were old. Thus, at best, it is a cynical suggestion as to how the dead weight in the sales force could be eliminated without incurring a successful lawsuit. At most, it shows that Bosworth was willing to sacrifice some unfortunate younger employees to rid the company of 'dead weight.'"

[4]This fact is not contained in Plaintiff's Statement of Disputed Facts, and may be excluded on that basis. In any event, the Defendant has submitted an affidavit from Robert Bourdeau that makes it clear that Ms. Rosenthal was not "still another cost accountant." Rather, Rosenthal was slated for layoff from another job when she was reclassified as a cost accountant, and retained, in November 2005, following Richard Levandowski's voluntary resignation. She is several years *older* than Plaintiff. (*See* Affidavit of Robert K. Bourdeau) Thus, this new "fact" fails to support Plaintiff's position, but demonstrates further the lack of any age discrimination, as does the hiring, at about the same time, of the 52 year old David Dunaj to replace a departed Laughlin. (*See* Defendant's Statement of Undisputed Facts ¶ 135)

At the end of the day, the facts, including the numerous admitted facts in Defendant's Statement as well as the additional new facts added by Plaintiff, simply would not support the conclusion that the Plaintiff was terminated due to his age.

## II.  Reply Argument

### A.  No Facts Point to A Discriminatory Intent in the Inclusion of Behaylo Amongst those Laid Off

The undisputed facts show that of those performing cost accounting work in April 2004, when Defendant, losing millions of dollars, was looking to reduce staffing, the sole cost accountant retained by the company was the *oldest* of the four, Richard Levandowski, who was also the Manager of the Department.  Plaintiff seeks to circumvent the obvious conclusion that flows from this fact with conclusionary assertions, contradicted by facts such as this, that there was a pervasive discriminatory age bias, as evidenced by a variety of comments, that as will be discussed below, demonstrate no such thing.

Plaintiff also attempts to undermine the lawfulness of the discharge not by contesting any of the Defendant's Statement of Undisputed Facts, but with a slew of[5]

---

[5]This would include, for example, Plaintiff's recitation to a subsequent $3.3 million inventory shortage "under Mr. Kelleher's and Mr. Levandowski's tutelage.  The problem, about which little information is provided, arose after July 6, 2006, and Kelleher learned of it only in a press release following his own departure from the Company.  Levandowski had left in October 2005. It is patently obvious that the fact is both gratuitous and irrelevant.  Thus, even if there were sufficient facts to show that the Company had acted foolishly by reducing its cost accounting staff to such a degree, the wisdom of the reduction in force is not an issue in this case.  Mesnick v. General Elec. Co., 950 F.2d 816, 835 (1st Cir. 1991), *cert. denied*, 504 U.S. 985 (1992); Condado Ins. Agencies, Inc., 120 F.3d 328, 338 (1st Cir. 1997) (courts do not assess the "merits--or even the rationality--of employers' nondiscriminatory business decisions). A shortage discovered more than two years after the Plaintiff's departure hardly proves age discrimination.

irrelevancies, snide and factually unsupported personal attacks on witnesses[6], and by

attempting to raise a question as to the competency of Mr. Behaylo's job performance.

The latter reflects Plaintiff's mistreatment of this reduction in force case as a

straightforward discharge case.  Thus, when setting forth the requirements for a *prima*

*facie* case, Plaintiff utilizes the definition applicable to a simple discharge case, rather

than the specific requirements used when dealing with a reduction in force.  Thus, he

asserts that the fourth prong of the *prima facie* can be demonstrated by showing that

"there was a continuing need for the services provided by the position for which he was

discharged."  While he cites Currier v. United Technologies Corp., 393 F.3d 246, 254

(1st Cir. 2004) in support, that case shows the court using a different standard.  Thus,

the court noted that "[i]n the context of a RIF," the fourth prong could be met by showing

not merely a continuing need for the services, but rather that "younger persons were

retained in the same position or that the employer otherwise did not treat age

neutrally."[7]  A similar approach is used under M.G.L. c. 151B.  *See* Sullivan v. Liberty

Mut. Ins. Co., 444 Mass. 34, 42, 825 N.E.2d 522, 532 (Mass., 2005) ("The United States

Court of Appeals for the First Circuit permits a plaintiff to satisfy the fourth element in an

---

[6]Thus, Plaintiff, while not properly disputing any of the facts from Richard Levandowski's testimony snidely states, "one could only wonder if Mr. Levandowski had any idea of what was going on."  (Plaintiff Brief at p.10)  This cheap shot in the guise of argument is premised on Plaintiff's claim that Levandowski first indicated that the company store, for which Behaylo performed accounting services, closed in May of *2003 (emphasis in the original)* and contradicted himself later by indicating that the store didn't close until *after* Mr. Behaylo was laid off.  Notably, the cited reference pages (Ex. 19, pp. 100-101), have no reference to any claim by Mr. Levandowski that the store closed in May of 2003.  To the contrary, at an uncited transcript page, Ex. 19, p. 20, Mr. Levandowski clearly indicates that the store was going to be closed in May of 2004, as indeed it was.  There is no reason not to believe that the manager was unaware of such plans in April 2004, when Plaintiff was notified of his layoff.

[7]The second case cited to establish the *prima facie* case, Zades v. Lowe's Home Centers, Inc., 446 F. Supp. 2d 29 (D. Mass. 2006) did not involve a reduction if force.

age discrimination case through a narrower, more specific showing that the employer retained unprotected or younger workers "*in the same position*" as the plaintiff (emphasis added), *citing,* Currier v. United Techs. Corp.*, supra* at 254.  This is consistent with the majority view ("…[and] [a]s we shall explain, a formulation along these lines is more satisfactory.")  Thus, the fact that the Company still needed a cost accountant is irrelevant in the context of a reduction in force, when the only full-time cost accountants employed since April 2004, Levandowski and Rosenthal, were both older than Plaintiff.

So, too, the fact that Levandowski testified that he would ultimately have replaced Mr. Behaylo as part of his desire to upgrade the department's skills, there is no doubt that the decision maker was Kelleher and the reason for the actual decision was his view that the "position was redundant to Mr. Levandowski."  (Plaintiff Ex. 10, 37, Defendant's Statement of Undisputed Facts ¶¶ 15-118)  Indeed, even if one assumes that Behaylo was the best cost accountant in the world, a decision to lay him off while retaining Levandowski would make the decision irrational, it would not make it discriminatory based on age.

Nor is there any factual dispute that two new graduates were hired in the summer of 2004[8].  However, the factual assertions relating to both the new grads, one of whom never performed any cost accountant work, and the other who performed "rudimentary"

---

[8]The Plaintiff notes that Kelleher's claim that the hires were in 2005 when the need arose is proven "false" by the record.  The Defendant's Statement of Undisputed Facts clearly indicates that the two were hired in the summer of 2004.  (*See*, Defendant's Statement of Undisputed Facts ¶¶ 132-135).  Moreover, Kelleher's actual testimony is *not* as stated by Plaintiff.  Asked when the hire of Ms. Zlobicka (who never worked as a cost accountant, even part-time) occurred, Kelleher answered that he didn't remember.  Pressed, he indicated that it was before 2006 and that he "believed" it was in 2005.

5

accounting work in both general accounting and cost accounting remain undisputed. Even if Plaintiff is viewed as "qualified for and willing to perform" the tasks later given to the new graduates, there was no obligation to recall him from layoff and assign him such work rather than hire a cheaper employee to perform the rudimentary services that, it turned out, were needed.  (See original memo at page 5)  Indeed, although contradicted by the undisputed facts, even if one assumed the Company, in April, knew it would hire two low paid new graduates to replace Plaintiff and/or the two other cost accountants, and/or the tax accountant, and/or the business analyst, all laid off from the finance department in April, it would be entirely lawful for a Company, losing millions, to replace higher level positions with entry level positions filled with entry level personnel. (*See* Defendant's Memorandum at p. 27, and cases cited therein.)

Nor does the use of the phrase "overqualified" demonstrate that the failure to recall Plaintiff into the position filled by the new graduates was discriminatory based on age.  First, there is no actual testimony that the belief that Plaintiff was overqualified was the actual cause of the decision not to recall Plaintiff rather than hire a new graduate.  Indeed, in the case of Bettencourt, the reason mentioned was the fact that the pay rate would result in a $50,000 per annum reduction in salary.  (See Response to Plaintiff Statement of Disputed Fact ¶32)  While not citing the over qualification as the motivating reason, in fact, Kelleher, responding to questioning as to whether either was qualified for positions he had described as needing only rudimentary accounting skills, indicated that Plaintiff was "overqualified".  However, contrary to Plaintiff's assertion, such testimony is not in conflict with expressed dissatisfaction with Behaylo's performance in *his* position.  Rather, it supports the conclusion that Kelleher viewed the

6

entry level positions created in the summer as different positions than Bettencourt's. The veracity of Kelleher's assertion that he perceived the new positions as needing only rudimentary skills was corroborated by the fact that each was filled by an individual without a single day of work experience as an accountant.  Just as a law firm may be dissatisfied with the work of a fifth year associate but believe him overqualified for a position to be filled with a new law school graduate, Kelleher could believe that Plaintiff was overqualified for an entry level position but not particularly good at his own.  In any event, as a matter of law, a decision not to fill an entry level position because of a good faith belief that the person is overqualified is not evidence of age discrimination.  Thus, in Pagliarini v. General Instrument Corp., 855 F. Supp. 459, *aff'd* 37 F.3d 1484 (1st Cir. 1994), the court noted that an employer's description of the employee as "overqualified" merely reflects the fact that the employee's talents, from the supervisor's perspective, was "poorly matched to available work" and is not evidence of pretext for age discrimination.  *See also*, Bay v. Times Mirror Magazines Inc., 936 F.2d 112, 118 (2d Cir. 1991); Senner v. Northcentral Technical College, 113 F.3d 750, 756-57 (7th Cir. 1997); EEOC v. Insurance Co. of North America, 49 F.3d 1418, 1421 (9th Cir. 1995); Stein v. National City Bank, 942 F.2d 1062, 1066 (6th Cir. 1991); Binder v. Long Island Lighting Co., 933 F.2d 187, 193 (2d Cir. 1991); Coleman v. Quaker Oats Company, 232 F.3d 1271 (9th Cir. 2000) (over qualified where employee would result in two step demotion); Sperling v. Hoffmann-La Roche, Inc., 924 F. Supp. 1396, 1409 (D.N.J. 1996)

7

**B.  Claims of A Discriminatory Corporate Mindset Are Unsupported by Fact**

**1.  Ambiguous Statements and Comments about Seniority Don't Establish a Discriminatory Corporate Mindset**

Plaintiff attempts to substitute a vitriolic claim that "Callaway brought with it a deep and abiding age prejudice" for actual facts showing that the actions taken by Defendant were discriminatory.  Thus, without any real evidence that the layoffs in general, or his in particular, was motivated by discriminatory animus based on age, Plaintiff seeks to assert that the entire company, and implied all its decision making processes, was tainted by a discriminatory mindset.  However, there is absolutely no factual basis for such an assertion.

Indeed, significantly, there is not even a claim that the Defendant engaged in a pattern or practice of age discrimination, which one would expect if a new management held the deep and abiding prejudice Plaintiff claims.[9]  Nor is there any statistical evidence that layoffs, as effectuated, had any disparate treatment on older workers, which would likewise be expected if management harbored such patent animosity towards older employees.  Indeed, there isn't even evidence of a disparate layoff of older workers within any subgroup overseen by a particular decisionmaker Plaintiff asserts was infected with such bias.  Thus, for example, the Plaintiff attempts to build his case on comments admittedly or allegedly made by James Bosworth, the Vice-President of Sales (an individual who actually commenced his own employment after the April layoffs were announced, precluding the possibility that Bosworth's views

---

[9]Such a claim would require evidence that there be systemic discrimination.  *See*, Lopez v. Metropolitan Life Insurance., Co., 930 F. 2d. 157, 160 (2d Cir.) *cert. denied* 502 U.S. 880, 112 S. Ct. 228 (1991).  Isolated instances, which would include the age related separations of four (or even six) individuals due to their age, would not suffice given the widespread reductions.  *Cf.* Teamsters v. United States, 431 U.S. 880, 97 S. Ct. 1842 (1977).

tainted those of the decision maker in Plaintiff's case.  Moreover, the comments were uttered at a meeting discussing the need to make changes in the field sales force, where Plaintiff was never employed.  However, even at that, Plaintiff does not even offer any statistical evidence that under Bosworth's direction, the sales department, in general, or the field sales staff that was the subject of Bosworth's comments in particular, got younger as a result of the actions taken by Bosworth.  Not only is there the absence of such evidence, the evidence presented by Defendant, which is undisputed, shows that the average age of the Chicopee salaried workforce actually *increased* after the April layoffs and *that there is a higher percentage of office employees in the protected age group since Callaway took over the operations than there was before*.  (*See* Defendant's Statement of Undisputed Facts ¶¶ 97, 98)  After two and one-half years of being operated by Callaway, thirty-five of the 100 exempt salaried personnel employed were over the age of fifty.  (Defendant's Statement of Undisputed Facts ¶ 37)

Despite the absence of such evidence, or perhaps because of it, Plaintiff attempts to build a case that Callaway's entire management was infected by age bias, relying upon the recitation of a variety of comments that purportedly show this discriminatory mindset against older employees.  Thus, Plaintiff asserts that beyond Robert Penicka's statement at the Chamber of Commerce, there are other statements and actions that demonstrate this so called deep and abiding age bias.

The comments by Penicka at the Chamber of Commerce meeting, as well as the background of his statements and the actual parameters of the changes he made to his own senior staff, none of which have been disputed, were addressed in detail in the

9

original brief, and need not be repeated.  To that breakfast remark, Plaintiff now adds a variety of comments that, for the reasons cited below, neither individually or cumulatively demonstrates the purported age bias of the speaker, much less a corporate mentality of age bias.

As discussed in greater detail below, the comments patently fail to create a material issue of fact regarding the purported corporate age bias for two primary and distinct reasons.  First, many of the comments relate to longevity with the company (seniority) and not to age at all.  Secondly, those that do refer to age at all, such as references to the "old regime" are, at most, ambiguous remarks that are susceptible to interpretations which are in no sense discriminatory.  As a matter of law neither category of remarks creates a material issue of fact pertaining to Plaintiff's claim.

Thus, the First Circuit has expressly not allowed references to age to support an age bias claim, even at the summary judgment stage, when such comments, even if made, may realistically be interpreted in a way that does not reflect a desire to make age based decisions.  Thus, in Gonzalez v. El Dia, Inc., et al., 304 F.3d 63, 69-70 (1st Cir. 2002), the First Circuit Court upheld summary judgment for the employer notwithstanding an alleged "pattern" of workplace remarks demonstrating age-based animus.  In language applicable to Plaintiff's efforts here, the Court stated:

> Upon closer examination, however, the stray remarks she identified afforded an inadequate foundation for the requisite discriminatory intent.
>
> In the first place, "stray workplace remarks," as well as statements made either by nondecisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus.  *See*, Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 36 (1st Cir. 2001); Laurin v. Providence Hosp., 150 F.3d 52, 58 (1st Cir. 1998) . . . .

10

Secondly, it is far from clear that the alleged remarks bespeak any age-based animus at all.  *See*, Fernandes v. Costa Bros. Masonry, Inc., 199 F.3d 572, 583 (1st Cir. 1999) (noting that "a statement that plausibly can be interpreted two different ways-one discriminatory and the other benign-does not *directly* reflect illegal animus") (emphasis added); Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996) ("'[A]mbiguous remarks, tending to suggest animus based on age, are insufficient, standing alone, to prove an employer's discriminatory intent.'") (citations omitted; emphasis added); Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 329 (1st Cir. 1996) (same).

Some statements, such as those made by Mr. Mercado, merely displayed a measure of surprise that Gonzalez was still employed at El Dia, without either asserting or implying that she was too old to be working.  Moreover, Mr. Mercado's alleged use of the salutation "Mom" -- though no doubt insensitive, perhaps even rude -- hardly constituted a self-sufficient foundation for an ADEA claim, especially since these particular attributions -- motherhood and advanced age -- plainly are not synonymous.

Similarly, the remarks Ms. Ferre allegedly directed at Gonzalez are reasonably susceptible to interpretation simply as descriptions of the somewhat dowdy appearance and demeanor which Gonzalez herself acknowledges.  Moreover, the Spanish phrase "manias de vieja" ("old ways") did not unambiguously connote that Gonzalez was old, let alone too old, but rather that she acted in ways which did not appear in keeping with a person her age.  *See, e.g.,* Pearson v. City of Manhattan, 33 F. Supp. 2d 1306, 1315 (D. Kan. 1999) (holding that phrase "old ways" not evidence of ADEA age-based animus, as such terms "apply more to a person's state of mind than to a person's age"); Martin v. Ryder Distribution Res., Inc., 811 F. Supp. 658, 664 (S.D. Fla. 1992) (observing that simple references to the plaintiff-employees-as "good old boys" and "old-fashioned"-are insufficient evidence of age-based animus under ADEA), *aff'd*, 16 F.3d 1232 (11th Cir. 1994).  Nor did any other statement, attributed either to Mr. Mercado or Ms. Ferre, unambiguously communicate an age-based animus. Rather, their remarks are readily susceptible to interpretations which are in no sense discriminatory.

For the same reason, as discussed individually below, the statements relied upon by

Plaintiff do not suffice to create even a material issue of fact.

As indicated, several of the comments do not relate to age at all, but are

comments that, in one way or another, purportedly reflect a bias against (or in some

cases merely a lack of respect for) the seniority of the employee.  Indeed, throughout

11

his argument, the Plaintiff continues to intertwine a disregard or disdain for seniority with animosity based on age, despite the facts that these are now definitively recognized as distinct concepts.  Hazen Paper Company v. Biggins, 507 U.S. 604, 113 S. Ct. 1701, 123 L. Ed. 2d 338 (1993).   The significance and rationale of maintaining that distinction is clearly demonstrated by the facts here.  Thus, both Bettencourt and Behaylo, cost accountants released in April of 2004, had more seniority than Levandowski who was retained.  Even if their greater seniority was admittedly disregarded, and indeed even if there seniority was held against them, Levandowski was older than both.  Thus, even if the decision making process was tainted by a discriminatory bias against those with seniority, which is denied, it clearly did not equate to age discrimination, since the less senior and older Levandowski was the only cost accountant retained.

Beyond the legally incorrect assertion that bias against senior employees is the same as bias against older employees is the underlying reality that, permeating Plaintiff's argument is the incorrect implication that the age discrimination laws were violated because TFGC failed to give sufficient weight to the past service of the Plaintiff, and others. Thus, for example, the Plaintiff's memorandum, at page four, attacks Mr. Bosworth's belief that longevity in a particular job is not the same as relevant experience, as if such a belief was demonstrative of age discrimination in any fashion. Similarly, the fact that Kelleher indicated that "anything that happened before 2003 [when the new company was formed] was meaningless" is cited to support the assertion that even at deposition Kelleher "could not restrain his discriminatory attitudes…"

(Plaintiff Brief, p. 5)[10]  The Defendant is taken to task for terminating Plaintiff's employment, notwithstanding the undisputed evidenced that it was losing millions of dollars, without Defendant's fully exploring what other positions he could possibly do. Such an argument is based on the underlying, incorrect, implication that there was some legal obligation for the Defendant to try to continue to employ Plaintiff in these circumstances, presumably in consideration to his past service.  The failure to search for a reason or excuse to continue to employ an employee, when it is clear that the employee is not needed in his own job, even if they were capable of performing other jobs, simply is not indicative of age discrimination.  When a company is obviously looking to reduce headcount, and if the job an individual was performing is no longer required, why would the company be expected to review what else the employee might be able to do?  The failure to do so raises no bona fide suspicion that the actions are motivated by consideration of age.

Nor would a company be expected to maintain the services of an employee because it might, at some later point, be necessary to hire additional staff to perform some of the more mundane tasks, leaving the remaining experienced employees more time to perform the duties that actually require their skills.  Thus, even if the court were to assume that in April 2004 the Company knew that several months later it might need an entry level accountant (a fact clearly not supported), why would a company losing

---

[10]Other absurd examples cited include the fact that he referred to the organizational chart as the one he "inherited", and the fact that there were a lot of legacy folks that had been around with Spalding.  Both were obviously true.  Moreover, these comments, like the others described in greater detail below, are not age related at all.  At most they reflect a lack of respect for those who had worked for the bankrupt predecessor company.

13

millions of dollars be expected to not immediately eliminate more than $100,000[11]  in

salary and hire a lower cost entry level new college graduate when and if the need

arose.  Even discarding the fact that companies sometimes end up cutting too deeply,

without any sinister intent, and must then adjust when the capacity of the remaining staff

to handle the work becomes clearer, even such a planned action would not raise the

specter that the initial decisions, or the decisions not to recall the higher paid

experienced accountant, was based on age rather than a desire to reduce costs.

In a like vein, why would Tom Fry, who *knew* that Roseanne Turner had IT

expertise at TFGC, and could at least temporarily handle the transition duties involving

the Ben Hogan line, and who *knew* that the Ben Hogan line was going to be handled by

Callaway (although the timing changed, the decision never did), be expected to review

Lonczak's job history to learn whether he had performed such duties for another

company many years before.  What inference of age discrimination can be inferred from

a failure to do so?  None.[12]

---

[11]Indeed, the savings came from the layoffs of at least five people by Kelleher, the three cost accountants, a tax accountant, and a business analyst.  To the extent the two new graduates were "replacements', a wholly inaccurate term in this context, they replaced all five for what was being spent on Bettencourt alone.

[12]Without wishing to appear callous, as a legal matter no employer ever needs to forego selecting the more senior employee for termination as long as the selection is not for independent age related reasons.  Legal considerations aside, those affected by the non-consideration of seniority have a plausible claim that the failure to consider their seniority is unfair if the Company has previously profited by the employees' past service, and then disregards it when effectuating a layoff.  Here, however, while for benefits Callaway honored the employees' past service (despite the so-called seniority or age bias), no employee worked for Defendant longer than any other.  Moreover, despite the Plaintiff's praise for the employees of the prior company, the fact is that the company lost millions of dollars and was forced into bankruptcy after selling off much of its business.  That kind of recent history does not create much incentive for the purchaser to attempt to retain employees of the prior company.

### 2.  Statements regarding "Deadwood", "Seniority" and an Absenteeism Study Fail to Demonstrate Age Bias

Moving to specific "remarks", Plaintiffs reference a statement by an unidentified woman from Callaway's personnel department that she had never seen a company with so many employees with over 20 years seniority and that, at Callaway, she was accustomed to people who had been there less than 20 years.  The statement does not even indicate that it was perceived as a negative, as opposed to positive observation.  In any event, it is not evidence of a corporate age bias.

Nor are the alleged statements of Kelleher or Bosworth referencing "dead weight' or "deadwood."  Plaintiff's Statement of Disputed Facts, as his memorandum, incorrectly claims that Kelleher told John Bettencourt that long-term employees who "are still here all this time" were "deadwood".  However, as detailed in the Response to Plaintiff's Statement of Disputed Facts, the affidavit Plaintiff relies upon does not assert that, but rather, that Mr. Kelleher "complained about long term employees who 'are still here all this time' <u>and</u> are 'deadwood'".  (Response ¶ 30)  Even if Kelleher thought all long-term employees were deadwood, for the reasons cited in <u>Hazen</u>, such a belief would not support an assertion that such a belief was discriminatory based on age.  But clearly, here the complaint was about people there a long time <u>and</u> were deadwood.  Not only does that not indicate the perception that he thought employees were deadwood if they were long service employees, the materials before the court show that Kelleher expressly told Bettencourt (who was with the company a very long time) that he did not think Bettencourt was deadwood.  (<u>Id</u>.)

15

Similarly, while Bosworth is alleged to have referred to the field sales force as having a lot of dead weight (*See* Defendant's Response to Plaintiff's Statement of Disputed Facts at ¶¶ 12-16)[13], that, too, is not an age related comment, especially in the context of a failing company.  *See, e.g.,* Gartland v. Hermetic Seal Corp., 1990 WL 127529, *2 (D. Mass., 1990) ("Plaintiff further charges that Wong said at one staff meeting, in the context of discussing the reorganization of the sales team, that "we should get bright young people in," and on another occasion that he wanted to "get rid of deadwood."  In the context of a company, which admittedly is in the throes of serious financial difficulties, these statements, even if considered collectively, do not suggest that the election of plaintiff for termination was discriminatory.").  *Accord*, Strickland v. Federal Express Corp., 45 Fed. Appx. 421, 425, 2002 WL 2026385, **4 (6th Cir. 2002) ("Deadwood" likely refers to people who just are not working hard."); Long v. Chesapeake and Ohio Ry. Co., 42 FEP Cases 990, 998 (E.D. Va. 1986) *aff'd.* w/o op., 825 F.2d 407 (4th Cir. 1987) (employees' allegations that union officers referred to them as "old women," "dead wood," "deteriorating" and "stagnant" held insufficient to establish that union acted with age-based motivation).

Straining further, in Orwellian fashion Plaintiff asserts that a pervasive corporate mindset of age bias is further demonstrated by the testimony of Richard Levandowski. The testimony relates to the finance department's periodically reviewing the costs associated with Defendant's relatively high absenteeism amongst its hourly workforce.

---

[13]Again, the Plaintiff's claim that indicates he referred to all the existing employees in such fashion was not supported by his own materials, and discussed in the Defendant's Response to Plaintiff's Statement of Disputed Facts.  Bosworth was also said to have said that "people who had been there over 20 years were "bleeding the company dry."  This, too, relates to an employee's longevity, not age.  What was and was not stated by Bosworth, as supported by the materials submitted by Plaintiff, are dealt with in Defendant's response at length.

Not only did this testimony not pertain to office employees, the testimony clearly indicates that the Company simply concluded that its higher costs was a result of the fact that the Company had an older hourly workforce, that such higher costs were simply a cost of doing business, and that no action was therefore appropriate.  Indeed, there isn't even a claim that any action was ever taken to reduce such age related costs, or to lower the ages in the factory.  The age of the workforce may be noted as the explanation for a higher than expected operating cost without leading to the conclusion that doing so is indicative of age bias in general, or that the termination of people outside the area even being studied was age related.  Cf.  Dartt v. Browning-Ferris Industries, Inc., (Mass.) 427 Mass. 1, 5, 691 N.E.2d 526, 529 (Mass., 1998) (evidence of employer attempts to contain or reduce workers' compensation claims not probative of handicap discrimination).

Similarly, generic references to the "old regime" or an employee being stuck in the "old ways" simply have no relevance.  Thus, in daily speech, few people properly use the term "former" rather than simply saying old.  Undoubtedly when the new federal courthouse opens most people will refer to the present building as the "old" federal courthouse, despite its relatively recent vintage.  Such comments fall far short of establishing that the speaker had any age bias, much less that it infected the entire company.  See, e.g., Moreno Morales v. ICI Paints, Inc., 383 F. Supp. 2d 304, 316 (D. Puerto Rico, 2005) (summary judgment in ADEA case although employee told she was associated with the "old administration" and specifically referred to me as part of the 'old team' that could not learn new things.); Gartland v. Hermetic Seal Corp., 1990 WL 127529, *2 (D. Mass., 1990) (fact that several managers called plaintiff "the old man" at

social events and occasionally at business meetings during the period of his employment does not, without more, suggest that the company is guilty of age discrimination.); Gagne v. Northwestern National Insurance Co., 881 F.2d 309, 315-16 (6th Cir. 1989) (affirmed summary judgment when a manager said that "he needed younger blood" in the company, as it was ambiguous as to whether the defendant meant younger in terms of time at the firm or younger in terms of age."). The comments here, at a minimum, "are readily susceptible to interpretations which are in no sense discriminatory". The house of cards Plaintiff attempts to build on them tumbles accordingly.

### C. The Terminations of Richardson & Gielow Don't Show Corporate Age Bias

The undisputed evidence demonstrates that since September 2003, in light of the consolidation of corporate operations in California, literally hundreds of salaried employees have been terminated. Plaintiff seeks to bolster his case by the testimony of two of these employees, David Richardson and Richard Gielow, who worked as Sales Managers. They worked in different positions, and were terminated at different times by a Vice-President who was not even employed by Defendant when the April layoffs were announced. To this end each has indicated that he was in the protected age bracket, indicated that he was terminated, and has at least raised a dispute as to his performance at the time of their individual termination.[14]

---

[14]Each claims to be the "top performer." As noted in the Response to Plaintiff's Statement of Disputed Fact, such a claim is vague and, in any event, unsupported. However, Bosworth testified that he did not think either were good employees. At his deposition Vaughn Rist testified that Richardson was a good salesman, but had not performed well as manager. Richardson claims that Rist told him otherwise. These disputes would have to be resolved by

Clearly, the evidence, which at most goes to Bosworth's mindset, would be inadmissible and irrelevant to show that other decision makers were biased based on age.  Moreover, such testimony should not be allowed in the case of Paul Duval either, since the obvious factual disputes regarding the reasons for their separation would require mini-trials regarding the separation of two other employees.  (*See* Defendant's Opposition to Plaintiff's Statement of Disputed Facts)[15]

---

the jury if their testimony could have any relevance even as to Paul Duval, terminated by Bosworth.

[15]In its opposition, Defendant noted that although Richardson had not pursued a claim, there is apparently a dispute over their performance, and the reasons for their termination.  As noted there:  "While actual evidence of a corporate mindset of age bias evidenced by the termination of others may be relevant, the mere discharge of an older employee, or even several older workers, whose performance is contested, would not be relevant to establish such a discriminatory corporate mindset, absent a preliminary finding that there was age discrimination in the termination of Mr. Richardson.  Thus, the mere termination of Mr. Richardson when there in fact was a consolidation of sales territories (especially given the literally hundreds of people terminated during this period and the absence of any statistical evidence showing a disproportionate number of older workers being fired), by itself, does establish age bias by Bosworth much less bias on a corporate-wide basis.  If Richardson's testimony was to the effect that he was told he was being fired due to his age, at least a *bona fide* argument could be made that he should be allowed to testify about his own termination because, that evidence, if credited, would show a bias at least by Bosworth.  However, there is no such evidence offered, merely circumstantial evidence from which Richardson, had he pursued a legal claim, could attempt to convince a jury that an inference of age discrimination could be drawn.  Thus, the evidence is that Richardson was doing a good job and was fired nonetheless does not compel a finding of age bias.  The Company would, of course, be required to rebut any such attempted inference, and present its evidence of Richardson's performance, the changes in the Sales Territories, etc., in an effort to demonstrate that Richardson's departure was not indicative of age bias.  This would, of course, have to be allowed, since if, but only if, the circumstantial evidence relating to Richardson's departure led the jury to first conclude that Richardson's termination evidenced age discrimination, could there even be a plausible assertion that the biases evidenced by Richardson's termination also tainted the decision relating to Paul Duval.  The jury would therefore be subjected to a trial within a trial relating to the consolidation of the outside Sales Force (which included none of the Plaintiffs) in general, and the specific reasons why Richardson was selected as part of the consolidation, all before it could even begin to assess if unlawful motivation caused Richardson's termination.  Only after engaging in that exercise could they determine if the same motivation also tainted the decision to terminate Duval.  "Allowing such evidence would be prejudicial "forcing [Defendant] to respond to each witness's claims, and creating, in effect, several "trials within a trial."  <u>Wyvill v. United Companies Life Ins. Co.</u>, 212 F.3d 296, 303 (5th Cir. 2000) *cf*. <u>Goldman v. First Nat'l</u>

19

Indeed, efforts to prove that their layoff in a reduction of force was age based by citing such testimony, was attempted but clearly rejected by the First Circuit in <u>Goldman v. First National Bank of Boston</u>, 985 F.2d 1113, 1119 (1st Cir. 1993) ("First, Goldman claims that discriminatory animus is inferable from the affidavits of eight former Bank employees, each stating that the affiant was the eldest, or one of the eldest, employees in a particular unit at the Bank and was performing adequately when dismissed pursuant to the reduction in force.  According to Goldman, the fact that several older, long-term employees with satisfactory performance records were terminated could lead a reasonable factfinder to conclude that Goldman would not have been terminated but for his age.  On the contrary, as the district court observed, anecdotal evidence of this sort does little more than "corroborate what was undisputed:  that members of the protected class were terminated as part of the [reduction in force]."  Evidence that eight employees, among the 119 selected for dismissal, were among the eldest in their respective units does not give rise to a reasonable inference that older employees were disproportionately affected by the reduction in force, much less that age discrimination motivated their dismissal.").  The court, both at trial and at this stage should not be diverted into a mini-trial over the separation of two other individuals, amongst hundreds, when those individuals never pursued any claim of age discrimination, and have no evidence that there own terminations were age related, other than their own circumstantial claims.  To say such limited evidence has independent relevance,

---

Bank, 985 F.2d 1113, 1119 (1st Cir. 1993)  (anecdotal evidence did not give rise to reasonable inferences supporting plaintiff's claim of age discrimination.)".

20

notwithstanding the absence of statistical evidence of a pattern of age discrimination in the layoffs, would be prejudicial, unfair, and unjustified.[16]

### D.  Plaintiff's Argument Against Partial Summary Judgment is Specious

Plaintiff's argument against partial summary judgment boils down to the fact that he asserts that the Company was mismanaged, and if not, it may still be operating as it was.  Thus, he asserts, "no one knows what would have happened in 2005 if the Company had not declined and if so many experienced and successful employees had not been terminated."  However, it is not, and will not be, the role of the jury in this case to decide if the Company was well managed.  It is not, and will not be, the role of the jury in this case, to engage in wild speculation as to whether the alternative universe might exist if this cost accountant rather than that cost accountant was retained.  Partial summary judgment is appropriate when, as here, the facts show that liability would have ceased at some point for non-discriminatory reasons.

There is no claim here that any of the entrepreneurial decisions made by Callaway, including its decision to cease operating TFGC as a stand alone unit, and assume responsibility for the Finance and Sales functions in California, was discriminatory or even, in a rational sense, the natural consequence of a discriminatory decision.  Rather, this case involves the termination of a single individual, (four counting the related cases, two cost accountants, a sales planner, and a logistic manager, who claim that they should not have been laid off when they were).  Plaintiff cannot plausibly argue to the court or to a jury that the managerial decisions that make partial summary

---

[16]While such matters are often not actually decided until a motion in limine, it would be counterproductive to allow the case to go to trial based, even in part, on evidence that should be precluded.  Of course, summary judgment here would be appropriate even if testimony of these individuals were considered.

judgment appropriate, decisions prompted by the continuing losses of millions of dollars and a change in the CEO of Callaway itself, would not have occurred if only he were not laid off when he was.  Similarly, the claim that "in an age neutral environment" where qualifications and performance were judged fairly, it may well have been appropriate to continue to offer positions to plaintiffs in California or elsewhere" is, to be blunt, poppycock.  There is no legal requirement to do so, and no basis for any assertion that although their purported replacement was terminated (and not offered a position in California or elsewhere), their employment with Defendant would have continued.

### E.  The Release Is Effective

Plaintiff notes that many of the cases cited by the Defendant are federal cases. However, even those cases (and there are several state law cases as well) holding that OWBPA is limited, decide the underlying release issues based on state law.  To the previous list Defendant would add, Stonkus v. City of Brockton School Dept., 322 F.3d 97, 103 (1st Cir. 2003) (holding that effective release of M.G.L. c. 151B claim did not need to satisfy requirements of the Older Worker Benefit Protection Act, stating "her age discrimination claim is pursuant to Mass. Gen. Laws. ch. 151B, which requires none of the pertinent elements of section 626(f)(1)."  Further, the fact that the earlier memorandum correctly cites state law on tender back, the Defendant cites Hartlage v, Town of Cohassett, 51 Mass. App. Ct. 1104, 744 N.E.2d 683, 2001 WL 278007 (Mass. App. Ct.) (an unpublished decision of the Appeals Court finding OWBPA inapplicable to c. 151B claim, and holding that failure to tender back precluded action even if there was duress.).  Indeed, there is really no *bona fide* argument made that the release was made under duress, or coerced, or that tender back rules are inapplicable.  Indeed, to

22

knowingly release a claim a party need not know every fact that might subsequently come forth during discovery, or such releases would virtually never be enforceable. Clearly, Plaintiff knew he was in the protected bracket and was being terminated.  He knew he was waiving any claim relating to any federal or state discrimination law relating to termination.  Does Plaintiff contend that the Plaintiff would have better understood the release if, instead, it released claims under M.G.L. c. 151B?  Plaintiff had time to review the agreement with counsel.  There is no basis for not honoring the clear intent of the release.

## **CONCLUSION**

As this court has recently noted, "the 'liberality' of the summary judgment standard 'does not relieve [him] of the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'" Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).  *See also,* Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994) ("When ... defendants invoke Rule 56 and identify a fatal flaw in a plaintiff's case, it becomes the plaintiff's burden to produce specific facts, in suitable evidentiary form, to contradict the flaw's existence and thereby establish the presence of a trialworthy issue."); Medina-Munoz, 896 F.2d at 8 ("The test for summary judgment is steeped in reality.")."  Paren v. Craigie et. al., 2006 WL 1766483 *12 (D. Mass. 2006). Summary judgment is appropriate.

23

Respectfully Submitted,


_____/s/ Jay M. Presser_____
Jay M. Presser, Esq.
BBO No. 405760
Counsel for Defendant
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts 01144
Dated:   February 2, 2007        Tel. (413) 737-4753/Fax: (413) 787-1941

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing *Defendant's Reply Brief in Opposition to Its Motion for Summary Judgment* was served upon the attorney of record for each other party via electronic filing on February 2, 2007.

_____/s/ Jay M. Presser_____
Jay M. Presser, Esq.