UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL BEHAYLO,<br>　　　　Plaintiff<br><br>vs.<br><br>CALLAWAY GOLF BALL OPERATIONS, INC.,<br>　　　　Defendant | )<br>)<br>)<br>)  CIVIL ACTION NO.: 05-30178-KPN<br>)<br>)<br>) |

**Consolidated With:**

| | |
|---|---|
| JOHN BETTENCOURT,<br>　　　　Plaintiff<br><br>vs.<br><br>CALLAWAY GOLF BALL OPERATIONS, INC.,<br>　　　　Defendant | )<br>)<br>)<br>)  CIVIL ACTION NO.: 05-30179 KPN<br>)<br>)<br>) |

**JOINT PRE-TRIAL MEMORANDUM**

1. **SUMMARY OF THE EVIDENCE**

   A.   Plaintiffs' Statement:

   This case involves the termination of Michael Behaylo and John Bettencourt on the basis of their age in violation of 29 U.S.C. §626. In September of 2003, the Callaway Golf Company purchased the assets of Spaulding Sports Worldwide for whom Mr. Behaylo and Mr. Bettencourt worked.

   At that time, Mr. Behaylo and Mr. Bettencourt continued their positions as Cost Accountants. The new Top Flite Company was headed by Robert Penicka, who in turn brought in a new management team which included Andrew Kelleher, Jamie Bosworth and Thomas Fry. All of those individuals that he brought in were in their thirties. In a public speech at the Chicopee Chamber of Commerce, Mr. Penicka stated that there were a lot of young faces on his management team and this was not by accident, but by design, even though the individuals may not be qualified for their jobs. In April of 2004, the Plaintiffs were laid off, allegedly on grounds that the Company no longer needed the services of Cost Accountants in the Finance

Department. The man who originally decided to choose Mr. Behaylo and Mr. Bettencourt for layoff, Andrew Kelleher, had referred to long-term employees as "dead wood" and "legacy folks". A few months after the layoff of Mr. Behaylo and Mr. Bettencourt, the Company hired two accountants who had just graduated from college and were in their twenties. Other experienced, older employees with good records were also laid off, and replaced.

B. Defendants Statement:

The Plaintiffs in this case had worked for Spalding Sports Worldwide, Inc., which was based in Chicopee, Massachusetts. Located in Chicopee was a factory that made Top-Flite and Ben Hogan golf balls as well as the corporate offices of the company. The company sold numerous other product lines, including what is called inflatables, i.e. Spalding basketballs, footballs, volleyballs and soccer balls. It owned Etonic golf shoes, Dudley softballs, Top-Flite and Ben Hogan golf club, operated a golf club assembly facility in Ft. Worth Texas, and operated a manufacturing plant in Gloversville, NY. All corporate functions for the business, such as sales, finance, human resources, and legal were done by office personnel working in Chicopee. Spalding suffered severe financial problems and, in the spring of 2003, had to sell off various businesses, including Etonic and Dudley, as well as its Spalding inflatable products. In fact, the company had to sell its very name, Spalding, to another company. For a brief period it continued to operate but was forced to file for bankruptcy in June of 2003. A judge ordered that the company's assets be auctioned off.

Some of the assets of the bankrupt company were purchased by a newly-formed, wholly owned subsidiary of Callaway Golf Company in California, first called The Top-Flite Golf Company, and later called Callaway Golf Ball Operations, Inc., which is the Defendant in this case.

The Defendant hired all the former Spalding employees (other than those who left to join the company that purchased the Spalding business), including the Plaintiffs. However, the new company, which began operations in September 2003, lost nearly $9 Million by the end of 2003. In 2004 it was on pace to lose even more. Part of the problem was that the number of white collar and office employees had not been reduced when much of the company's assets were sold off in spring of 2003. The manager of each area was told to review his or her own staff, and decide what staff was critical to the company's efforts going forward. Andrew Kelleher was responsible for the Finance Area, which included diverse areas including general accounting, cost accounting, financial planning, payroll etc. In April 2004 the company employed four cost accountants, including the Manager of Cost Accounting, Richard Levandowski, who supervised two costs accountants, Dave Norman and Plaintiff Behaylo, and the former manager of cost accounting, Plaintiff John Bettencourt. Kelleher decided that the company could get by for the time being with only one cost accountant, and he decided that the only cost accountant he would keep at the time was Richard Levandowski, who was the oldest of the four. The others

were laid off, and received two weeks notice and then severance pay. In July of 2004 the Manager of General Accounting (which is significantly different than cost accounting) sought permission to hire another general accountant to handle some of the more routine tasks. Kelleher approved the request providing the new hire also worked part-time helping Levandowski, who was working alone in that department, with some routine cost accounting tasks. A new college graduate was hired and worked for the company for less than a year. In 2005, still losing money, Callaway Golf decided to continue to operate the factory in Chicopee, which actually employs more people now than it did before, but virtually all remaining office support functions were eliminated, as employees of Callaway Golf Company did that work in California. Since April of 2004 the Company has never employed more than one full-time cost accountant, and the persons that held that position, first Richard Levandowski and when he resigned, Mary Rosenthal, are both older than either Mr. Bettencourt or Mr. Behaylo.

2. **FACTS ESTABLISHED:**

   It is established and agreed that Callaway purchased the assets of the former Top-Flite operation which manufactured golf balls in Chicopee, Massachusetts. The identity of the parties is also agreed to, and it is agreed that Mike Behaylo and John Bettencourt were laid off effective April 30, 2004.

3. **CONTESTED ISSUES OF FACT:**

   All other material questions of fact, including the reasons for the Plaintiffs' terminations are in dispute.

4. **JURISDICTIONAL QUESTIONS**

   Not Applicable

5. **QUESTIONS RAISED BY PENDING MOTIONS:**

   Plaintiffs do not have any pending motions.

   Defendant has filed a Motion to Preclude the Testimony of Craig Moore. This motion supplements the pending Motion to Strike the Reports of Dr. Moore.

6. **ISSUES OF LAW:**

   Plaintiffs anticipate that they will file motions in limine regarding at least two issues:

   a. Whether or not the Plaintiffs can introduce certain statistical evidence without expert testimony; and,

 b. To prohibit references to the Plaintiff's signing of defective releases under the Older Workers Benefits Protection Act.

Defendant has filed motions in limine regarding at least the following issues:

 a. To preclude testimony to the jury on the issue of front pay
 b. To preclude testimony regarding backpay after 2005
 c. To preclude testimony regard statements relating to:

  a. Seniority
  b. Deadwood
  c. Any statement by James Bosworth
  d. Statements by Richard Levandowski

 d. Ancedotal evidence by other terminated employees

 e. References to cost savings

 f. To preclude testimony of damages for years for which tax returns have not been provided

 g. To preclude testimony regarding the failure to rehire or transfer Plaintiff

7. **AMENDMENTS TO PLEADINGS:**

 None

8. **ANY ADDITIONAL MATTERS:**

 None

9. **PROBABLE LENGTH OF TRIAL:**

 Plaintiffs estimate that the trial will take 2-3 weeks.

10. **WITNESSES:**

 Plaintiffs:

  1. Michael Behaylo
  2. John Bettencourt
  3. Paul Duval
  4. Gary Lonczak
  5. Keeper of the Records for Top Flite
  6. Susan Silvestri

7. Craig Moore
8. Vaughn Rist
9. Robert Penicka
10. Darlene Orciuch
11. Cynthia Nunes
12. Richard Levandowski
13. Andrew Kelliher
14. Jaime Bosworth
15. Thomas Fry
16. Christine Conti
17. Sharon Lally
18. Katarzyna Zoblicka

Defendants:

In addition to those listed by the Plaintiff above Defendant might call the following:

1. Peter Arturi
2. Robert Bordeau
3. Roseanne Turner
4. Christine Rouseeau
5. Mary Gay

To the fullest extent possible Defendant reserves the right to call additional rebuttal witnesses or to respond to testimony from "me too" witnesses.

**11.  PROPOSED EXHIBITS:**

Plaintiffs:

1. Top Flite Golf Company Financial Department Chart (Plaintiffs' Summary Judgment Exhibit No. 9)

2. John Bettencourt Resume

3. Michael Behaylo Resume

4. Personnel Record of Katarzyna Zoblicka

5. Personnel Record of Sharon Lally (Defendant's Summary Judgment Exh. No. 8)

6. Personnel Record of Michael Behaylo

7. Personnel Record of John Bettencourt

8. Personnel Action Form regarding Paul Duval (Plaintiffs' Summary Judgment Exhibit No. 20)

9. Personnel Record of James R. Gorman (Plaintiffs' Summary Judgment Exhibit No. 21)

10. Personnel Record of Scott Serois (Plaintiffs' Summary Judgment Exhibit No. 22, Defendant's Summary Judgment Exhibit No. 28)

11. Personnel Record of Roseann Turner (Plaintiffs' Summary Judgment Exhibit No. 28; Defendant's Summary Judgment Exhibit #29)

12. Production Statement for Top Flite 2002-2004 (Defendant's Summary Judgment Exhibit No. 7)

13. Top Flite Callaway's Statement of Operations 2003-2004 (Defendant's Summary Judgment Exhibit. No. 6)

14. Callaway Newspaper advertisement for Cost Accountant, 2007.

Plaintiffs reserve the right to add additional exhibits based on the positions taken by the defendant and supplementation of discovery.

### Defendant

[The Defendant has filed various motions in limine to preclude testimony in one trial regarding the layoffs of other individuals. To the extent such motions are allowed in whole or in part, the number of exhibits would be greatly reduced.]

1. Offer letter from Defendant to Michael Behaylo, Exhibit 2[1] (Exhibit 3 from the deposition of Michael Behaylo).

2. Termination letter Exhibit 3 (Exhibit 10 from the deposition of Michael Behaylo).

3. The listing of Employees Terminated, included as Response to Plaintiff's Interrogatory No. 4, part of Exhibit 4.

4. The charts responsive to Plaintiff's Interrogatory No. 6, part of Exhibit 4.

5. Exhibit 5 (the Defendant's Answers to Plaintiff, Michael Behaylo's, Second Set of Interrogatories).

6. The relevant portions of the personnel files produced as Exhibit 1 to Second Request for Production of Documents, Exhibit 6.

---

[1]Except as noted the Exhibit No. refers to the exhibit number of the document as filed with the Materials in Support of Defendant's Motion for Summary Judgment.

6

7.   Statement of Operations, produced as Exhibit 2 to Second Request for Production of Documents, Exhibit 6.

8.   Exhibit 8 (the Personnel Action Form for Sharon Lally, produced to Plaintiff in response to his Second Request for Production of Documents and, depending on the evidence allowed, other portions of previously produced Lally Personnel file.

9.   Bettencourt Quick Zoom Report 1 Exhibit 10 (Exhibit 2 from the deposition of John Bettencourt).

10.  Bettencourt Quick Zoom Report Exhibit 11 (Exhibit 3 from the deposition of John Bettencourt).

11.  Other records of interim earnings produced by Plaintiff(s) directly, or produced by Dr. Craig Moore in response to subpoena.

12.  Printout of Company Records, if required, showing what benefits Plaintiff was not receiving at the time of his layoff.

13.  Organizational Chart for Finance Department - Exhibit 12 (Exhibit 6 from deposition of John Bettencourt).

14.  List of Finance Department Employees, showing age and position, effective January 2004.

15.  List of Finance Department Employees remaining, showing age and position, effective January 1, 2006.

16.  Hire Letter for John Bettencourt, Exhibit 13 (Exhibit 12 from the deposition of John Bettencourt).

17.  Termination Letter for John Bettencourt Exhibit 14 (Exhibit 14 from the deposition of John Bettencourt).

18.  Resume of Paul Duval, Exhibit 17 (Exhibit 6 from the deposition of Paul Duval).

19.  E-mail reflecting change of duties for Paul Duval, Exhibit 18 (Exhibit 9 from the deposition of Paul Duval).

20.  Portions of Paul Duval's Personnel File, including Exhibit 19 (Exhibit 10 from the deposition of Paul Duval).

21.  Hire Letter for Paul Duval, Exhibit 21 (Exhibit 12 from the deposition of Paul Duval).

22. Termination Letter for Paul Duval.

23. Sworn charge of discrimination, Exhibit 22 (Exhibit 15 from the deposition of Paul Duval).

24. Hire Letter Gary Lonczak, Exhibit 25 (Exhibit 1 from the deposition of Gary J. Lonczak).

25. Termination Letter Gary Lonczak, Exhibit 26 (Exhibit 8 from the deposition of Gary J. Lonczak).

26. 2004 Evaluation of Gary Lonczak.

27. 2004 Evaluation of Roseanne Turner, and other responsive materials from personnel file of Roseanne Turner, including Ex. 29.

28. Documents from personnel file of Richard Levandowski produced in discovery.

29. June 2, 2004 listing of Employees laid off April 30, 2004, Exhibit 39.

30. June 2, 2004 Charts Reflecting pre-Layoff and post-layoff employee profile, Exhibit 39.

31. Potentially relevant documents from personnel file of Scott Sirois, including Exhibit 26, produced in response to Michael Behaylo's Second Request for Production of Documents.

32. Termination Notices sent to employees regarding consolidation.

33. Response to Plaintiff's Request for Production of Documents No. 4, and Supplement to Exhibit 4 to document request, hand-delivered to Plaintiff May 16, 2006.

34. Staffing Lists of Employees, showing position and ages.

35. Expert Report of Dr. Craig Moore, if allowed to testify.

36. (if me too testimony is allowed by Field Sales Personnel and managers) the Personnel Files of Sales Field Personnel Laid off or not laid off, and other evidence reflecting the reductions in force effecting field sales.

Defendant reserve the right to add additional exhibits based on the testimony offered and the positions taken by the plaintiff and supplementation of discovery.

**12.  OBJECTIONS REGARDING FEDERAL CIVIL PROCEDURES RULE 26:**

Defendant has filed Motions to Strike Expert Report and Motion to Preclude the Testimony of Expert Witness Craig Moore.

| THE PLAINTIFFS BY | THE DEFENDANT BY |
|---|---|
| By: ___/ S /  Maurice M. Cahillane___<br>Their attorney<br>Maurice M. Cahillane, Esq., BBO#069660<br>Egan, Flanagan and Cohen, P.C.<br>67 Market Street<br>Springfield, Massachusetts 01103<br>Tel: 413-737-0260; Fax: 413-737-0121 | ___/ S / Jay M. Presser___<br>Its attorney<br>Jay M. Presser, Esq.; BBO No. 405760<br>Skoler, Abbott & Presser, P.C.<br>One Monarch Place, Suite 2000<br>Springfield, Massachusetts 01144<br>Tel: 413-737-4753; Fax: 413-787-1941 |
| Dated:  ___2/20/2008___ | Date:  ___2/20/2008___ |

12074-050132\Document in ProLaw